REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No.  0508

September Term, 2012

TOMMY GARCIA BONILLA

v.

STATE OF MARYLAND

Krauser, C.J.,
Woodward,
Salmon, James P.
  (Retired, Specially Assigned),

JJ.

Opinion by Salmon, J.

Filed: May 27, 2014

This case has an unusual procedural background that presents us with the following issue: If a judge imposes a sentence that is less than the sentence agreed upon by the judge, the prosecutor and the defendant in an ABA plea agreement,[1] may another judge, pursuant to Md. Rule 4-345(a), later increase that sentence? We shall answer "yes" to that question.

## I.

### *UNDISPUTED FACTS*

In 1989, Tommy Garcia Bonilla ("Bonilla") was indicted by a Prince George's County grand jury on two counts of first-degree murder and numerous other serious crimes. Count I of the indictment charged Bonilla with the first-degree murder, on April 14, 1989, of Jose Lozano. In count III, Bonilla was charged with the first-degree murder of Ruth Vasquez. After the indictment was filed, the State notified Bonilla that it intended to seek a sentence of life without possibility of parole.

On August 28, 1990, Bonilla changed his plea to guilty in regards to the first-degree murder charges set forth in counts I and III of the indictment. Prior to entering the guilty plea, Bonilla admitted, on the record, that the following facts, among many others, were true: 1) about one month before the murders of Mr. Lozano and Ms. Vasquez, he and one Freddy

---

[1]In *Gross v. State*, 186 Md. App. 320, 322, n.1 (2009), we said that an ABA plea agreement:

> Is an agreement by the sentencing judge, the defendant and the prosecutor as to what the maximum sentence will be if the plea is accepted. In the subject case, the ABA plea agreement specified the exact sentence that would be imposed. In some ABA plea agreements, however, the judge, prosecutor and the defendant simply agree that if the plea is accepted the sentence imposed will not exceed a specified number of days or years.

R. DeLeon ["DeLeon"] formed a plan; 2) the plan was to enter apartment No. 508, located at 1802 Metzerott Road, in Prince George's County, to kill whomever they found there and to steal cocaine that they believed to be in the apartment; 3) on April 14, 1989, Bonilla and DeLeon entered apartment 508, ransacked it, and stole the cocaine and jewelry they found in the apartment; 4) while in the apartment, DeLeon, using a 9 mm handgun, shot Jose Lozano once in the back of the head, killing him instantly; and 5) after Mr. Lozano was killed, Bonilla, using a 38 caliber handgun, killed Ruth Vasquez by shooting her once in the chest.[2]

Prior to pleading guilty, the State, the presiding judge, and Bonilla entered into an unambiguous ABA plea agreement. The terms of that agreement were that Bonilla would, if called by the State, testify truthfully at the trial of DeLeon and would enter guilty pleas as to counts I and III of the indictment. In exchange, as to count III, which charged appellant with the premeditated first-degree murder of Ruth Vasquez, the judge would sentence Bonilla to life imprisonment; 2) as to count I, which charged Bonilla with the first-degree murder of Jose Lozano, the court would impose a consecutive sentence of life imprisonment, with all but 20 years suspended; and, 3) on the date of sentencing, the State would withdraw its notice of intent to seek a life without possibility of parole sentence and, except as to counts I and III, *nol pros* all counts against Bonilla. Sentencing of Bonilla was delayed for approximately six months, until February 22, 1991, so that Bonilla could testify against

_____

[2]The victims were house sitting in apartment No. 508 when they were murdered.

DeLeon.

At the sentencing hearing, it was agreed that Bonilla had fulfilled his part of the plea agreement by cooperating in the prosecution of DeLeon. Bonilla's trial counsel then placed on the record his recollection of the terms of the ABA plea agreement, but in doing so he got the counts mixed up. Defense counsel said that the agreement was that as to count I, Bonilla would receive a life sentence, and as to count III, he would receive a consecutive sentence of life, suspend all but 20 years. This, of course, was incorrect, but the prosecutor, when his turn to speak arose, confirmed that what the defense attorney had said in regard to the plea agreement was accurate. The sentencing judge then proceeded to give the following sentence: As to count I - life imprisonment; as to count III, life imprisonment suspend all but 20 years, sentence to run consecutive to the sentence imposed in count I.

More than two decades later, on November 7, 2011, Bonilla filed a motion to correct an illegal sentence and a motion for credit against time spent in custody. More specifically, he asked the court to change the sentence imposed in count I to conform with the plea agreement, i.e., a sentence of life imprisonment, suspend all but 20 years, to run consecutively with the sentence imposed in count III. If the court had granted the motion, without also changing the sentence imposed as to count III, Bonilla's total sentence would be life, suspend all but 40 years,[3] which would have been far less than the total sentence

_____

[3]If Bonilla's sentence was changed as requested, the sentence would have been: life, all suspended but 20 years (count I) and a consecutive sentence (as to count III) of life, suspend all but 20 years.

contemplated by the ABA plea agreement, i.e., life plus 20 years.

On January 17, 2012, the State filed a cross-motion to correct the sentence entered as to count III. The State took the position that the court was required to correct <u>both</u> sentences in order to conform with the plea agreement. After conducting two hearings on the pending motions, the Circuit Court for Prince George's County, on March 30, 2012, re-sentenced Bonilla as to count III to life imprisonment; as to count I, the sentence was reduced from the one originally imposed in 1991, to life suspend all but 20 years, sentence to run consecutively to the sentence imposed as to count III, sentence to commence as of April 21, 1989. Put another way, the sentencing judge, in March 2012, gave Bonilla the sentence agreed upon when the ABA plea agreement was placed on the record in 1990.[4]

## II.

### *QUESTION PRESENTED*

(1) Did the circuit court err by increasing appellant's sentence on count III from life, suspend all but Twenty (20) years, to life?

## III.

Md. Rule 4-345(a) provides:

(a) **Illegal sentence**. The court may correct an illegal sentence at any time.

---

[4]The circuit court judge said that he was re-sentencing Bonilla "to correct the commitment record and to correct the illegality of the sentence on each count."

At the time Bonilla pled guilty; Md. Rule 4-243 provided, in material part:[5]

(a) *Conditions for Agreement.* – The defendant may enter into an agreement with the State's Attorney for a plea of guilty or nolo contendre on any proper condition, including one or more of the following:

. . .

(6) *That the parties will submit a plea agreement proposing a particular sentence, disposition, or other judicial action to a judge for consideration pursuant to section (c) of this Rule.*

. . .

(c) *Agreements of sentence, disposition, or other judicial action.* (1) Presentation of the Court. – If a plea agreement has been reached pursuant to subsection (a)(6) of this Rule for a plea of guilty or nolle contendre which contemplates a particular sentence, disposition, or other judicial action, the defendant's counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. *The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the judge directs.*

. . .

(3) Approval of Plea Agreement. – If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

(Emphasis added).

Bonilla first argues:

---

[5]Presently, Md. Rule 4-243 is, in so far as here material, substantively identical to the version in effect in 1990. Although, since 1990, there have been some changes in the rule in regard to numbering and spelling.

An illegal sentence is a sentence that is not permitted by law. *Hoile v. State*, 404 Md. 591, 621 (2008). Appellant's life sentence on count one constituted an illegal sentence because it exceeded the terms of the binding plea agreement with regard to that count. A sentence that exceeds the sentence to which the parties agreed as part of a plea agreement constitutes an illegal sentence within the meaning of the Rule 4-345(a). *Cuffley v. State*, 416 Md. 568, 575 (2010) (citing *Dotson v. State*, 321 Md. 515, 521-22 (1991)). *See also, Matthews v. State*, 424 Md. 503 (2012). Appellant's sentence on count one was illegal because it exceeded the agreed upon sentence on that count of life with all but twenty years suspended. Thus the [c]ourt below acted properly by reducing the sentence on that count from life to life suspend all but twenty years.

The State agrees with the argument just quoted, as do we. Bonilla, however, further contends that the original sentence imposed as to count III was <u>not</u> illegal, even though the sentence was less than the sentence to which the judge, the prosecutor and he (Bonilla) agreed. He phrases his argument as follows:

A sentence increase may also result from the correction of an illegal sentence. *Hoile*, 404 Md. at 620. However, the sentence on Count 3, though inconsistent with the plea agreement, did not constitute an illegal sentence. Neither this Court nor the Court of Appeals has ever held that a sentence below a binding plea agreement constitutes an illegal sentence. In *Hoile*, the Court of Appeals noted that under Maryland Rule 4-345(a), a court may increase a sentence, <u>but may not do so under other subsections of the rule</u>. *Id*. at 626. Because [a]ppellant's sentence was not illegal, the [c]ircuit [c]ourt was without jurisdiction to increase the sentence on count three pursuant to Maryland Rule 4-345(a).

(Emphasis added).

This argument is not persuasive. The trial court relied on Md. Rule 4-345(a) — not any other subsection of Rule 4-345 – when it increased the sentence as to count III. And, Bonilla advances no logical reason — and we can think of none — why we should hold that

a sentence that exceeds the one agreed to by the parties to an ABA plea agreement is illegal while a sentence that is less than the one agreed to in an ABA agreement is not.

In *Hoile v. State*, 404 Md. 591 (2008), the Court said:

Maryland Rule 4-345(a) states that a "court may correct an illegal sentence at any time." The correction of an illegal sentence may result in an increase over the erroneous sentence previously imposed on the defendant. *State v. Griswold*, 374 Md. 184, 821 A.2d 430 (2003) (holding that the trial court illegally reduced convictions on motion for reconsideration and reinstating convictions which effectively increased sentence); *State v. Hannah,* 307 Md. 390, 403, 514 A.2d 16, 22 (1986) (vacating, on the State's appeal, the sentence of probation before judgment and ordering trial court to impose mandatory minimum of five years in prison); *State ex rel. Sonner v. Shearin,* 272 Md. 502, 526, 325 A.2d 573, 586 (1974) ("Upon the remand the trial judge shall delete the improper suspension of sentence so that the handgun violation will be for the mandatory term of five years."); *Mateen v. Galley,* 146 Md. App. 623, 649, 807 A.2d 708, 723 (2002) (holding that an illegal sentence "may be corrected by the imposition of a legal sentence, even though the corrected sentence is longer than the original illegal sentence"), *reversed on other grounds, Mateen v. Saar*, 376 Md. 385, 829 A.2d 1007 (2003).

An illegal sentence is a sentence "not permitted by law." *Walczak v. State*, 302 Md. 422, 427, 488 A.2d 949, 951 (1985). An illegal sentence is properly corrected only "where there is some illegality in the sentence itself or where no sentence should have been imposed." *Evans v. State*, 382 Md. 248, 278, 855 A.2d 291, 309 (2004). . . .

*Id.* at 620-21.

It is true, as Bonilla asserts, that no reported Maryland appellate case "has ever held that a sentence" that is below the sentence agreed to in a binding plea agreement constitutes an illegal sentence. But the Court of Appeals, in *Chertkov v. State*, 335 Md. 161 (1994), strongly suggested, albeit in *dicta,* that such a sentence is illegal. *Id.* at 174-75.

In *Chertkov*, the trial court imposed a sentence in accordance with a binding ABA plea

agreement, *id.* at 164, but later reduced the sentence by granting the defendant "probation

before verdict." *Id*. at 165. The State filed an appeal, contending that the new sentence was

illegal. *Id*. at 165-66. The Court of Appeals held that the State had no right to appeal. *Id.*

at 169-70.

The *Chertkov* Court, nevertheless, decided to address the issue of whether the State,

at the circuit court level, had a right to enforce the plea agreement. The reason for addressing

the issue was because that issue was one of "substantial importance." *Id.* at 170-71. In that

regard, the *Chertkov* Court first discussed its decision in *Dotson v. State*, 321 Md. 515

(1991), a case in which the trial judge imposed a sentence in conformity with the ABA plea

agreement but a sentence review panel later increased that sentence. *Id*. at 519. The *Dotson*

Court set aside the more harsh sentence because it constituted an illegal sentence. *Id.* at 524.

After analyzing the *Dotson* case, the *Chertkov* Court (335 Md. at 174-75) said:

> The facts in *Dotson* do not limit the applicability to the case *sub judice*
> of the considerations underlying that decision. That it was critical in *Dotson*
> that the violation of the plea agreement prejudiced the defendant does not
> mean that a violation of a plea agreement that prejudices the State is beyond
> the reach of principles of fairness and equity or that the institution of plea
> bargaining cannot be adversely affected. Just as a defendant would be loathe
> to participate in plea bargaining if he or she could not be certain that the
> bargain that he or she made would be fulfilled, so too would the State. There
> would be no incentive for the State to engage in plea bargaining if it were
> possible for a defendant to enter into a binding plea agreement only to have the
> sentence contemplated by that agreement modified a short time later. Nor
> would it be fair to the State, which is, after all, one of the parties to the
> agreement. *See* Rule 4-243(a).
>
> This case presents a stronger case than *Dotson* for holding a binding
> plea agreement to be inviolate. In this case, unlike in *Dotson*, the same judge

who accepted the petitioner's pleas and approved the plea agreement calling for "a particular sentence" modified that sentence at the behest of the petitioner. From *Dotson* and Rule 4-243(c)(3), it is clear that a court that binds itself to fulfill the plea agreement thereby relinquishes his or her right to modify the sentence, thereby imposed, absent the consent of the parties, and, in particular, in the case of reducing the sentence, absent the consent of the State. If a three judge panel, acting pursuant to a different authority, cannot violate the binding aspect of a plea agreement, certainly the judge who approved the agreement and imposed the sentence cannot.

(Emphasis added) (footnote omitted).

More recently, in *Carlini v. State*, 215 Md. App. 415, 437 (2013), we characterized the language from *Chertkov*, that we have emphasized, as "considered *dicta*." We then enunciated the principle to be drawn from the ABA plea agreement cases, viz:

The common denominator in all of these instances of Rule 4-345(a) sentence illegality is that once the objective outer boundary markers for the sentence have been established, the illegality that inheres in the sentence itself is obvious. Even if all of the antecedent proceedings had been procedurally impeccable, the illegality of the sentence is facial and self-evident.

215 Md. App. at 438.

"Here, the outer boundary markers" for the sentence to be imposed as to count III were set back in 1990 and any sentence imposed outside those boundaries that was lower than that agreed upon was illegal. Therefore, the circuit court had a right to correct that sentence so that it would conform to the agreement.[6] *Chertkov*, 335 Md. at 174-75; *Carlini*,

---

[6]Bonilla, relying on subsection (b) of Md. Rule 4-345, argues:

The sentence imposed on count three is properly characterized as a mistake in pronouncement that the court cannot now correct. In *State v. Sayre*, the sentencing court inadvertently sentenced a defendant to a

215 Md. at 437-38.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

concurrent sentence when the court apparently intended to make the sentence consecutive. 314 Md. 559 (1989). After the State brought the court's mistake to its attention, the court called back the defendant and changed the sentence from concurrent to consecutive. The Court of Appeals held that, under then Maryland Rule 4-345(b), once sentence is imposed, the sentencing court cannot change the defendant's sentence, regardless if the sentence imposed may have been in error. *Id*. at 565. Given that appellant's sentence on count three was neither the result of a mistake in the commitment record nor an illegal sentence, but rather a mistake in pronouncement, the [c]ourt was without authority to increase the sentence once imposed and erred in so doing.

Subsection (b) of Md. Rule 4-345 deals with judgments that may be revised at any time if the judgment was entered due to "fraud, mistake, or irregularity." *Id*. The fact that the original sentence as to count III was not infected with "fraud, mistake or irregularity" as those words are used in subsection (b), of Md. Rule 4-345, has nothing to do with situations where an illegal sentence is imposed. Illegally imposed sentences are governed by subsection (a) of Md. Rule 4-345.